IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DOMINIQUE T. SADDLER

      Plaintiff,

Case No.: 26-cv-395

v.

CHARTER MANUFACTURING COMPANY, INC.
DBA "CHARTER STEEL"

      Defendant.

## COMPLAINT

**NOW COMES** the Plaintiff, Dominique T. Saddler, through his attorneys, AXEPOINT LAW, and hereby alleges as follows:

### PARTIES

1. Plaintiff, Dominique T. Saddler is an adult resident of Grafton, Wisconsin.

2. Defendant Charter Manufacturing Company, Inc., doing business as Charter Steel, operates a steel manufacturing facility in Saukville, Wisconsin.

3. At all relevant times, Defendant employed more than fifty (50) employees within and was a covered employer under the FMLA and ADA.

### JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including the FMLA, 29 U.S.C. § 2601 et seq.; the ADA, 42 U.S.C. § 12101 et seq.; the FLSA, 29 U.S.C. § 201 et seq.; and 42 U.S.C. § 1981.

5. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in Saukville, Wisconsin.

6. Plaintiff timely filed a Charge of Discrimination with the EEOC.

1

7. The EEOC issued a Notice of Right to Sue on December 12, 2025.

8. This action is filed within 90 days of Plaintiff's receipt of that Notice.

## FACTUAL ALLEGATIONS

**Plaintiff's Employment**

9. Plaintiff began working for Charter on or about August 5, 2024.

10. Plaintiff worked as a rolling "steelmore" operator in Charter's rolling department.

11. Plaintiff worked for Charter more than twelve (12) months prior to his termination.

12. In the twelve months preceding September 2025, Plaintiff worked well over 1,250 hours.

13. Plaintiff routinely worked approximately sixty (60) to seventy (70) hours per week.

14. Plaintiff was qualified to perform the essential functions of his position and performed his duties satisfactorily.

**COVID-19 Diagnosis and Leave**

15. On or about September 10, 2025, Plaintiff tested positive for COVID-19.

16. Plaintiff experienced symptoms including fatigue, respiratory symptoms, weakness, and related physical limitations.

17. Plaintiff promptly notified his supervisors and Human Resources of his diagnosis.

18. Plaintiff provided medical documentation, including a doctor's note.

19. Plaintiff requested leave for September 10, 2025.

20. A supervisor informed Plaintiff that if he did not report to work he would be terminated unless FMLA leave was entered into the system.

21. Human Resources informed Plaintiff that his absence would be coded as leave.

22. Plaintiff later observed that September 10 was coded as leave in Charter's internal system.

23. When Plaintiff attempted to report to work with documentation, management

2

instructed him not to report and to remain home.

24. Plaintiff complied with those instructions.

**Termination**

25. On October 16, 2025, Charter terminated Plaintiff's employment.

26. Charter stated that Plaintiff had used a sick or flex day he did not have.

27. The September 10 absence was cited as the basis for termination.

28. Charter terminated Plaintiff for the same absence it had coded as leave and for which it had instructed him not to report to work.

29. Charter's stated reliance on September 10, 2025 as the basis for termination was pretextual because Charter had already designated that absence as leave and had instructed Plaintiff not to report to work.

30. Defendant's termination decision was motivated by multiple unlawful factors, including Plaintiff's request for protected medical leave, his COVID-19 diagnosis and related impairment, his complaints regarding improper overtime compensation, and his race.

31. Plaintiff was denied severance he was due that was also issued to other employees.

**Disability Allegations**

32. Plaintiff's COVID-19 infection constituted a physiological impairment affecting his respiratory and immune systems.

33. Plaintiff's symptoms limited major life activities, including breathing, concentrating, and working.

34. Charter treated Plaintiff as medically unfit to report to work and instructed him not to report.

35. Charter terminated Plaintiff shortly after he disclosed his COVID-19 diagnosis and symptoms.

36. Additionally, Charter regarded Plaintiff as having an impairment and terminated him because of that perceived impairment.

**Higher-Pay Classification and Wage Disparity**

37. During his employment, Plaintiff was trained for a higher-paying rolling position with a rate of approximately $28.00 per hour.
38. Plaintiff completed required training hours for that position.
39. Plaintiff was scheduled and assigned to perform the higher-paying role.
40. Plaintiff's supervisor failed to sign off on the training form necessary to trigger the higher rate.
41. Charter continued paying Plaintiff at approximately $26.26 per hour.
42. Similarly situated white employees who completed training were promptly signed off and paid at the higher rate.
43. Plaintiff complained internally regarding his pay and classification.
44. Plaintiff regularly worked more than forty (40) hours per week.
45. Charter calculated Plaintiff's overtime premium using the lower hourly rate.
46. Because Plaintiff performed higher-paying duties, his regular rate for overtime purposes should have reflected the higher classification rate.
47. Charter underpaid Plaintiff's overtime compensation by failing to calculate overtime based on the proper regular rate.
48. Plaintiff informed supervisors and Human Resources that Charter was improperly calculating his overtime compensation by using the lower hourly rate rather than the higher classification rate he was performing.
49. Plaintiff objected that this resulted in underpayment of overtime wages required by law.

## Count I - FMLA Interference

Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

50. Plaintiff was an eligible employee under the FMLA.

51. Charter was a covered employer.

52. Plaintiff notified Defendant that he had tested positive for COVID-19, provided medical documentation, and requested leave for that date.

53. Charter interfered with Plaintiff's FMLA rights by: threatening termination unless FMLA leave was used, coding the absence as leave and later rescinding protection, and terminating Plaintiff for the protected absence.

54. Plaintiff suffered lost wages and benefits.

## Count II - FMLA Retaliation

Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

55. Plaintiff engaged in protected activity by requesting and using FMLA leave.

56. Plaintiff's request for leave and Defendant's designation of the September 10 absence as leave constitute protected activity under the FMLA.

57. Charter terminated Plaintiff because of that protected activity.

58. The temporal proximity and Charter's stated reliance on the leave date establish causation.

59. Charter's conduct was willful.

## Count III - ADA Discrimination

Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Plaintiff had a physical impairment, COVID-19 and related symptoms, that affected

5

major bodily functions including respiratory and immune function.

61. Plaintiff's symptoms substantially limited major life activities, including breathing, concentrating, and working.

62. Alternatively, Charter regarded Plaintiff as having such an impairment when it instructed him not to report to work and treated him as medically unfit to perform his job.

63. Charter terminated Plaintiff shortly after he disclosed his diagnosis and symptoms.

64. Charter terminated Plaintiff because of his actual or perceived disability.

65. Defendant's termination decision was made within approximately one month of Plaintiff's disclosure of his diagnosis and symptoms.

66. As a direct and proximate result, Plaintiff suffered economic and non-economic damages.

### Count IV - Race Discrimination
### 42 U.S.C. § 1981

Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

67. Plaintiff is Black.

68. Charter intentionally discriminated against Plaintiff on the basis of race with respect to compensation and termination.

69. Plaintiff was paid less than similarly situated white employees for comparable work.

70. Plaintiff's race was a motivating factor in Charter's decision to underpay him and terminate his employment.

71. Plaintiff and other white comparators performed substantially similar job duties under similar working conditions.

72. Those white employees were signed off and paid at the higher classification rate.

### Count V - FLSA Overtime Violation

Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

73. Plaintiff worked overtime hours in excess of forty (40) in one or more workweeks.

74. Charter assigned Plaintiff to perform duties of a higher-paying classification but failed to include the higher classification rate in calculating his regular rate of pay.

75. As a result, Charter underpaid Plaintiff's overtime premium in violation of 29 U.S.C. § 207.

76. Charter's violations were willful within the meaning of 29 U.S.C. § 255(a).

### Count VI - FLSA Retaliation

Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

77. Plaintiff engaged in protected activity under the FLSA by complaining to Charter that it was improperly calculating his overtime compensation and underpaying him wages required by law.

78. Plaintiff's complaints were made to supervisors and Human Resources prior to his termination.

79. Charter terminated Plaintiff shortly after these complaints.

80. The close temporal proximity between Plaintiff's protected wage complaints and his termination supports a causal connection.

81. Charter's stated reliance on the September 10 absence was pretextual and was used to mask retaliation for Plaintiff's wage complaints.

82. Charter's retaliation was willful.

83. As a result, Plaintiff suffered lost wages and other damages.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant as follows:

A. For back pay, front pay, and lost employment benefits;

B. For liquidated damages as permitted under the Family and Medical Leave Act and the Fair Labor Standards Act;

C. For compensatory damages for emotional distress and other non-economic harm as permitted by the Americans with Disabilities Act and 42 U.S.C. § 1981;

D. For punitive damages as permitted under 42 U.S.C. § 1981;

E. For injunctive and equitable relief, including but not limited to reinstatement (or in the alternative, front pay), correction of personnel records, and any other relief necessary to make Plaintiff whole;

F. For reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 2617, 29 U.S.C. § 216(b), 42 U.S.C. § 12205, and 42 U.S.C. § 1988;

G. For pre-judgment and post-judgment interest as allowed by law; and

H. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated at Milwaukee, Wisconsin on this 11th day of March 2026.

**AXEPOINT LAW**
*Attorneys for Plaintiff*

Electronically Signed By:
*/s/ O. Emil Ovbiagele*
State Bar No. 1089677
826 N. Plankinton Ave, Suite 600
Milwaukee, WI 53203
Office: (414) 585-0588
Fax: (414) 255-3031
emil@axepoint.com